IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

GREGORY M. HARSTAD                                                                          PLAINTIFF

V.                                                                         NO. 1:13-CV-004-DMB-DAS

CITY OF COLUMBUS, MISSISSIPPI                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gregory M. Harstad filed this race discrimination lawsuit against his employer, Defendant City of Columbus, Mississippi, for not promoting him to Chief of Police and hiring instead an African-American officer for the position. The City has filed a motion for summary judgment on grounds that Plaintiff is unable to prove his race discrimination claim because he was not qualified for the Chief of Police position, and Plaintiff cannot show he was removed from the applicant pool because of his race. Plaintiff argues summary judgment should be denied because he can make a prima facie showing of race discrimination. Upon due consideration of the motions, case record, and applicable law, the Court finds that the City's motion should be denied.

**I**

Plaintiff, a Caucasian man, began working as a patrolman for the police department in Columbus, Mississippi, in August 2009. Before joining the Columbus Police Department, Plaintiff served as a pilot and radio communications analyst for over 25 years in the United States Air Force and as a trooper for 5 years in the North Dakota Highway Patrol. Pl.'s Dep. [34-4] at 3, 6-7; Doc. [34-5] at 12. Plaintiff had been working in the Columbus Police Department for approximately two years when the City of Columbus posted a notice of vacancy for Chief of Police. The relevant portion of the notice stated:

> Graduation from an accredited four-year college or university is required. In addition, candidates should have ten years of pertinent experience, including at least five years of supervisory experience as a division commander, assistant police chief or police chief.

Doc. [40-4]. The notice was later amended to change graduation from a four-year college or university from "required" to "preferred" and to remove the requirement for applicants to have five years of supervisory experience. Doc. [40-6]; Doc. [34-5] at 2-3. Plaintiff applied for the position on or about August 16, 2011.[1] Pl.'s Dep. [34-4] at 11, 28-29; Doc. [34-5] at 11.

The City received approximately 82 applications for the position, and 25 applicants were referred to a selection committee for further screening. Armstrong Dep. [34-2] at 4; Mitchell Dep. [34-3] at 2. The selection committee, which was comprised of 21 members of the community from diverse backgrounds, performed a second screening of the applications. Karriem Dep. [34-6] at 2; Smith Dep. [34-1] at 7. Three of the 25 applicants who passed the initial screening were interviewed. The City ultimately hired Selvain McQueen, an African-American police officer who had been working with the Columbus Police Department over 20 years and who had been serving as the interim police chief since July 2011.

When Plaintiff learned he did not pass the initial screening, he met with Patricia Mitchell, the Human Resources Director for the City, to find out why he was no longer being considered. Pl.'s Dep. [34-4] at 14-15. Mitchell told Plaintiff that his military background did not count as pertinent experience and, thus, he failed to meet the requirements for police chief. *Id*. at 14. In a letter dated October 25, 2011, Plaintiff requested that his application be reconsidered and that he be allowed to interview for the position. Doc. [34-5] at 5-7. Plaintiff explained in detail why his military experience should be considered pertinent experience for purposes of the position. *Id*.

---

[1] The date the notice was amended appears to be unclear from the record, so it is also unclear whether Plaintiff applied for the position before or after the notice was amended.

2

Plaintiff claims he hand-delivered the letter to Mitchell and that she told him he would not be reconsidered or interviewed. Pl.'s Dep. [34-4] at 16-17.

On November 18, 2011, Plaintiff filed a grievance with the Columbus Police Department stating that he had been discriminated against to the extent his application was not given fair and equal consideration. Doc. [34-5] at 8. Mitchell responded to Plaintiff's grievance in a letter dated November 29, 2011, by stating that "standard procedures were adhered to during the selection process of applicants for the position of Police Chief." Doc. [34-5] at 10. Mitchell also advised Plaintiff of his right to request the Mayor of Columbus and the City's Chief Operations Officer to review his grievance. *Id*.

Plaintiff requested further review of his grievance. He claims the Chief Operations Officer and Assistant Mayor told him he would have gotten an interview if he had detailed his military experience in his resume, but they were unwilling to reconsider him at that point. Pl.'s Dep. [34-4] at 17-19. Before a hiring decision was made, Plaintiff had a formal meeting with the Columbus City Council to explain his reasons for filing the grievance and why he should have made it past the initial screening. *Id*. at 19-20. The City Council unanimously voted against Plaintiff being reconsidered for police chief. Karriem Dep. [34-6] at 4.

On January 7, 2012, Plaintiff filed a charge of discrimination based on race with the Equal Employment Opportunity Commission ("EEOC"). Compl. [1] at Exh. A. In a letter dated January 12, 2012, Plaintiff was notified that he did not get the position. Doc. [34-5] at 4. On October 11, 2012, the EEOC issued Plaintiff a notice of right to sue letter. Plaintiff filed his complaint in this Court on January 7, 2013, alleging that the City discriminated against him based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.[2]

---

[2] Because Plaintiff's claims arise under Title VII, this Court has subject matter jurisdiction over the complaint based on a federal question. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 2000e-5(f)(3).

On December 23, 2013, the City filed the instant motion for summary judgment, arguing that Plaintiff cannot make a prima facie showing of employment discrimination. Specifically, the City asserts that Plaintiff lacked the supervisory experience required to qualify for Chief of Police and that race was not a factor in its hiring decision. Plaintiff argues in response that he was clearly better qualified than McQueen and that the City amended the job requirements for Chief of Police so that African-Americans would qualify for the position. The motion has been fully briefed and is ripe for decision.

## II

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the evidence shows there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When determining whether summary judgment is appropriate in a case, a district court must review all well pleaded facts in the light most favorable to the nonmoving party. *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 (5th Cir. 2001).

### A

Under the *McDonnell Douglas* burden-shifting analysis, "a plaintiff challenging a failure to promote must first establish a prima facie case, demonstrating that (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race." *Autry v.*

*Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir 2002)). If the plaintiff demonstrates these four factors, he raises an inference of discrimination, and the burden shifts to the defendant-employer to offer a legitimate, nondiscriminatory reason for its failure to promote. *Autry*, 704 F.3d at 347 (citing *Price,* 283 F.3d at 720). Once the defendant proffers a nondiscriminatory reason for its action, the plaintiff must then "prove either that the defendant's articulated reason is merely a pretext for race discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative)." *Autry*, 704 F.3d at 347 (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).

It is undisputed that Plaintiff was a member of a protected class;[3] he was not promoted to police chief; and the City promoted someone outside of Plaintiff's protected class. At issue is whether Plaintiff was qualified for the position. The City argues that Plaintiff lacked the requisite level of law enforcement experience to qualify for police chief because he never progressed higher in rank than a patrol officer and did not have any supervisory experience in a police department. Plaintiff argues that his military experience satisfies the requirement for supervisory experience in the vacancy announcement. He further contends that the issue of whether he had "ten years of pertinent experience" should be resolved by a jury. Pl.'s Mem. [41] at 9.

---

[3] Title VII is "not limited to discrimination against members of any particular race." *McDonald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273, 278-79 (1976) (holding that Title VII protects whites discriminated against in favor of racial minorities). "Similarly the EEOC … has consistently interpreted Title VII to proscribe racial discrimination in private employment against whites on the same terms as racial discrimination against nonwhites …." *Id.* at 279. Moreover, "Congress intended to eliminate all practices which operate to disadvantage the employment opportunities of any group protected by Title VII, including Caucasians." *Johnson v. Transp. Agency, Santa Clara Cnty., Cal.*, 480 U.S. 616, 643 (1987) (citations and quotation marks omitted).

"An employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not 'qualified.' However, only objective requirements may be used in making this argument." *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003) (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001)). That is, an employer cannot defeat summary judgment at the prima facie stage by claiming the plaintiff failed to meet entirely subjective hiring criteria. *Medina*, 238 F.3d at 681.

The police chief requirements at issue have objective and subjective elements. The vacancy stated, in relevant part, that applicants "should have ten years of pertinent experience, including supervisory experience as a division commander, assistant police chief or police chief." Doc. [40-6]. While the number of years required is objective, it appears that the City may have been able to make a quasi-subjective determination on whether an applicant's experience is "pertinent." *See Medina,* 238 F.3d at 681-82 (finding that "substantial sales experience" requirement is subjective hiring criteria). The vacancy listed examples of "pertinent experience" to aid in the screening process, "including … supervisory experience as a division commander, assistant police chief or police chief," Doc. [40-6]; but did not specify that these examples were the only way to satisfy the "pertinent experience" requirement.

Under Fifth Circuit law, an employer may not "utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process … is challenged as discriminatory." *Medina*, 238 F.3d at 681 (quoting *Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980)). In the instant case, the City does not rely on wholly subjective standards to argue that Plaintiff was unqualified for the police chief position. The record shows that Plaintiff did not have any supervisory experience as a police officer for the North Dakota Highway Patrol or Columbus Police Department. He had not

worked in law enforcement for ten years nor had he served as a division commander, police chief, or assistant chief. Rather, at the time of the vacancy, Plaintiff had five years law enforcement experience as a trooper, pilot, and commercial motor carrier inspector for the North Dakota Highway Patrol, and two years law enforcement experience as a patrol officer and driving instructor for the Columbus Police Department. Doc. [40-2] at 1-2. The only other law enforcement experience listed on his resume comes from his military service. Doc. [40-2] at 1. During his time in the Air Force, Plaintiff managed budgets and held supervisory positions such as chief pilot, task force commander, regional director of admissions, and assistant deputy commander of operations. *Id.* at 2.

While the City can show that Plaintiff did not have ten years of law enforcement experience at a police department, there is still a question about whether Plaintiff's military service is "pertinent experience" so as to satisfy the hiring criteria for police chief. According to the Fifth Circuit, "it is inappropriate to decide as a matter of law that an employee is unqualified because he has failed to meet entirely subjective criteria." *Medina*, 238 F.3d at 681 (citing *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 (5th Cir. 1993)). "Instead, an employee must demonstrate that he meets objective hiring criteria at the prima facie case stage, and the issue of whether he meets the subjective hiring criteria is dealt with at the later stages of the analysis." *Medina*, 238 F.3d at 681 (citing *Lindsey*, 987 F.2d at 327).

Plaintiff is able to show, and the City does not challenge, that he satisfies the objective hiring criteria for the position. Such is demonstrated by Plaintiff's resume and deposition testimony summarizing his work experience and qualifications. Because Plaintiff can show that he meets the objective hiring criteria, he is able to make a prima facie case of discrimination on his failure to promote claim. *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 469 (5th Cir. 2001)

("A plaintiff must demonstrate that he meets objective promotion criteria at the prima facie stage of his case.") (citations omitted). Summary judgment should not be granted then on this issue at this stage of the analysis. *See id.* ("Whether an employer's subjective hiring criteria serves as pretext for discrimination is an issue for the trier of fact to decide in the later stages of the burden-shifting analysis.") (citations omitted).

**B**

After a Title VII plaintiff makes a prima facie case of discrimination, the burden shifts to the defendant-employer to articulate a "legitimate, nondiscriminatory reason" for its failure to promote. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (citations omitted). An employer is "allowed to be incorrect in its assessment of the facts it relies on to justify [an adverse decision] but it is not allowed to have any discriminatory animus against [the plaintiff] in making its decision." *Vaughn,* 665 F.3d at 636 (citations omitted). If the employer "provides a legitimate, nondiscriminatory reason for [its] decision, the burden shifts back to the plaintiff." *Johnson*, 351 F.3d at 622. The plaintiff must then "prove either that the defendant's articulated reason is merely a pretext for race discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative)." *Autry*, 704 F.3d at 347 (citing *Vaughn*, 665 F.3d at 636).

The City's proffered reason for failing to promote Plaintiff to police chief is that he did not meet the minimum experience requirements. The City contends that it hired a better candidate for the position and race did not influence the decision. In response, Plaintiff contends that the City's proffered reason is false and that he can show pretext because he is clearly better qualified than McQueen.

8

A plaintiff may establish pretext in a failure to promote case by showing he was "clearly better qualified" than the hired applicant. *See Price*, 283 F.3d at 723 ("In order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must 'leap from the record and cry out to all who would listen that he was vastly- or even clearly-more qualified for the subject job.'") (citation omitted). "A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) (citations omitted). "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).

Plaintiff argues that his education and work experience are superior to McQueen's, making him the better candidate for police chief. Plaintiff primarily focuses on his educational background as the basis for being more qualified than McQueen. Plaintiff has a bachelor's degree in military history and a master's degree in aeronautical sciences. McQueen does not have a college degree. Though Plaintiff makes much of his educational background, he does not explain how it makes him more qualified for the position.

Other than ten years of pertinent experience, the qualifications for police chief included: knowledge of implementing and managing a police department operating budget, application of personnel management employment law in a police agency, familiarity with developing effective disciplinary and promotion practices, experience in implementing community-oriented policing philosophy, and experience in developing and maintaining positive relationships with local, state,

...

and federal law enforcement agencies.  Doc. [40-6].  The parties do not dispute that Plaintiff and McQueen met these requirements.

In additional support of his "clearly better qualified" argument, Plaintiff asserts that he has managed a $4.5 million military budget and McQueen has no comparable experience. Plaintiff highlights his 25 years of military experience as well as his work with the North Dakota Highway Patrol and Columbus Police Department.  He managed subordinates and worked on combat, counter-terrorism, and counter-narcotics missions in the Air Force.  He also achieved the rank of Lieutenant Colonel.  However, both candidates have significant experience, and any "attempt to equate years served with superior qualifications … [is] unpersuasive." *Bodenheimer v. PPG Indus., Inc*., 5 F.3d 955, 959 (5th Cir. 1993).

Regarding McQueen's experience, the record shows he had worked over 20 years in the Columbus Police Department when he applied for police chief.  He progressed through the ranks of seniority at the Police Department.  McQueen was hired as a basic patrolman in 1988, promoted to Corporal in 1992, and then to Lieutenant in 1999.  McQueen Aff. [34-7] at 1. During deposition, McQueen stated that has held every position within the Columbus Police Department except overseeing the Narcotics Unit.  McQueen Dep. [34-9] at 2.  McQueen investigated crimes and complaints, supervised other officers, headed divisions within the department, and even served as interim Chief of Police before being hired for the position. While McQueen does not have a bachelor's degree, he does have a high school diploma, and earned 131 hours in college at Jackson State University and Hinds Community College.  *Id*. at 3; McQueen Aff. [34-7] at 2.

Based on the evidence in the record, this Court cannot conclude that Plaintiff was "clearly better qualified" than McQueen.  *See Deines v. Tex. Dep't of Protective and Regulatory*

*Servs.*, 164 F.3d 277, 282 (5th Cir. 1999) ("employer's judgment as to qualifications will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision"). Although Plaintiff contends his military career is more extensive than McQueen's career in law enforcement, "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." *Nichols*, 81 F.3d at 42. "More evidence, such as comparative work performance, is needed." *Id*. Here, Plaintiff fails to submit evidence of comparative work experience. Nor does Plaintiff demonstrate that his military experience is comparative to McQueen's law enforcement experience. Further, Plaintiff does not attempt to compare his law enforcement career at the North Dakota Highway Patrol and Columbus Police Department to McQueen's. Plaintiff performed supervisory functions and managed budgets while in the military, not in a state or local law enforcement department like McQueen. And McQueen, unlike Plaintiff, served as interim Chief of Police around the time the vacancy was posted. Because Plaintiff does not submit sufficient evidence, he fails to raise a fact question on whether he was "clearly better qualified" than McQueen. *See Price*, 283 F.3d at 723. Plaintiff, therefore, must rebut the City's proffered reason on other grounds.

### C

Plaintiff additionally asserts that the City's reason for not selecting him as police chief is false or unworthy of credence because he was qualified for the position and his race is the real reason for the failure to promote. To prove the City's reason is false or unworthy of credence, Plaintiff must produce evidence, viewed in the light most favorable to him, that would permit a jury to believe the proffered reason for the adverse action is not true and, instead, is pretext for race discrimination. *Vaughn*, 665 F.3d at 637 (citation omitted).

As noted above, Plaintiff meets the objective hiring criteria for police chief and the Court assumes for summary judgment purposes that he was qualified for the position. Plaintiff argues that the changes to the vacancy notice regarding college graduation indicate the City's true intent, which he claims was to hire a black police chief. Plaintiff contends that the vacancy initially required applicants to graduate from a four-year university or college but was later changed so that African-Americans would qualify. To support this argument, Plaintiff submits deposition testimony and a newspaper article published at the time the police chief applications were reviewed.

Mitchell, the City's Human Resources Director, testified during her deposition that she prepared the first draft of the police chief vacancy and listed graduation from an accredited four-year university or college as a preference, not a requirement. Mitchell Dep. [34-3] at 3-4. Before the vacancy was published, the City's Chief Operations Officer directed Mitchell to change the vacancy to reflect that graduation from college was required. *Id.* at 4; Armstrong Dep. [34-2] at 3. Mitchell updated and published the vacancy per those instructions. After seeing the vacancy in a newspaper, the Mayor of Columbus, an African-American man, recommended to the Chief Operations Officer that the graduation requirement be changed back to a preference. Smith Dep. [34-1] at 3. The Mayor testified by deposition that only two of the City's former police chiefs had a bachelor's degree. *Id.* At the Mayor's recommendation, the vacancy was amended to list graduation from a four-year university or college as preferred.

Plaintiff argues that the Mayor, who has known McQueen for over 20 years, used his position to ensure that McQueen was hired as police chief. According to Plaintiff, it was known throughout the Columbus Police Department that the City planned to hire a black police chief. Plaintiff claims three black officers also told him he would not get the position because of his

12

race. Plaintiff further contends that the selection process for police chief was tainted because the Mayor helped screen applications. When asked during deposition, the Mayor denied being involved in the initial screening process. Smith Dep. [34-1] at 6. The Chief Operations Officer testified at deposition that he made the decision to cut Plaintiff at the initial screening and that the Mayor was not involved in the decision. Armstrong Dep. [34-2] at 5. However, Plaintiff submits a newspaper article from the relevant time period stating that the Mayor helped screen applications. *See* Doc. [40-7].

Whether or not the Chief Operations Officer decided to cut Plaintiff's application, he reported to the Mayor and so did other officials involved in the selection process for the new police chief. The Mayor was included in the hiring process but was unable to vote for a candidate. Smith Dep. [34-1] at 8-9. The City Council consisted of six members, four were African-American and two were Caucasian. Karriem Dep. [34-6] at 4. The two Caucasian councilmen voted against hiring McQueen, and the four African-American councilmen voted in favor of hiring him. *Id.* at 6. The Mayor testified during deposition that he did not recall whether he recommended or otherwise had any influence on the decision to hire McQueen. Smith Dep. [34-1] at 6. McQueen and the Mayor both testified that they have known each other approximately 20 years and that they are professional acquaintances but not friends. McQueen Dep. [34-9] at 3; Smith Dep. [34-1] at 4-5.

This rebuttal evidence, when viewed in the light most favorable to Plaintiff, calls into question the City's proffered reason for not promoting or further considering Plaintiff for police chief. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (5th Cir. 2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive.") (citation

omitted). It supports Plaintiff's argument that race may have influenced the hiring decision, and undermines the City's contention that it did not promote Plaintiff solely because he lacked sufficient experience. "Evidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Reeves,* 530 U.S. at 147-48). Based on his rebuttal evidence, Plaintiff raises a genuine issue of material fact regarding whether the City's proffered reason is pretext for race discrimination. Therefore, summary judgment is inappropriate at this time.

### III

In light of the analysis above, Plaintiff makes a prima facie case for race discrimination based on the City's failure to promote him to police chief. Because Plaintiff also establishes a genuine issue of material fact regarding the City's proffered reason, summary judgment cannot be entered. The City's motion is therefore **DENIED**.

SO ORDERED, this the 30th day of September 2014.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**